United States District Court
Northern District of California

United States District Court
Northern District of California

UNITED STATES OF AMERICA,

Plaintiff,

v.

ROGER MURRINGTON,

Defendant.

Case No.: CR 13-70444-MAG (KAW)

DETENTION ORDER

## I. BACKGROUND INFORMATION

Defendant Roger Murrington is charged in a complaint with violations of 21 U.S.C. § 841(a)(1), (b)(1)(B)(viii) (Possession with Intent To Distribute Methamphetamine), 18 U.S.C. § 992(g)(1) (Possession of Ammunition by Convicted Felon).

Defendant initially appeared before the undersigned on May 22, 2013, and was charged with the instant offense. At that time, Defendant requested a bail study, and a detention hearing was scheduled for May 28, 2013, which was continued to May 30, 2013. Pretrial Services prepared a full bail study and recommended that Defendant be detained. On May 30, 2013, the Court conducted the detention hearing. Defendant was present, in custody, and represented by Edward Smock of the Federal Public Defender's Office. Assistant United States Attorney Natalie Lee appeared on behalf of the Government. For the reasons stated below, the Court orders that Defendant be detained.

## II. LEGAL ANALYSIS

The Bail Reform Act requires that in a pretrial posture, the Government bears the burden of proving that a defendant poses a risk of flight and/or a danger to the community that cannot be

mitigated through the imposition of conditions of release. If the Government does not meet its burden, the court's duty is to fashion appropriate conditions that permit the defendant to remain out of custody during the preparation of his or her defense, while safeguarding against flight or danger to the community. Close cases should result in release: "[t]o give effect to the principle that doubts regarding the propriety of release be resolved in favor of the defendant, the court is to rule against detention in close cases." *United States v. Chen*, 820 F. Supp. 1205, 1208 (N.D. Cal. 1992) (Walker, J.) (citing *United States v. Motamedi*, 767 F.2d 1403, 1405-06 (9th Cir. 1985)).

A person facing trial generally shall be released if some "condition, or combination of conditions . . . [can] reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c). In non-capital cases, pretrial release should be denied "[o]nly in rare circumstances." *Motamedi*, 767 F.2d at 1405; *see also United States v. Salerno*, 481 U.S. 739, 755 (1987) (upholding constitutionality of Bail Reform Act; "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception"). Bail hearings generally proceed by proffer, and the rules of evidence do not apply. 18 U.S.C. § 3142(f). At the hearing, the court determines whether any conditions in section 3142(c) will reasonably assure the defendant's appearance and the safety of the community or another person. *Id.* The Bail Reform Act "mandates release of a person facing trial under the least restrictive condition or combination of conditions that will reasonably assure the appearance of the person as required." *Motamedi*, 767 F.2d at 1405.

In evaluating whether pretrial release is appropriate, a court must consider (1) the nature and circumstances of the offense, (2) the weight of the evidence, (3) the history and characteristics of the person (including his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug and alcohol abuse, criminal history, or record concerning appearance at court proceedings), and (4) the nature and seriousness of the danger to any person or the community posed by the person's release. 18 U.S.C. § 3142(g); *Motamedi*, 767 F.2d at 1407.

United States District Court
Northern District of California

**A. The Nature and Circumstances of the Offense and Weight of the Evidence**

The complaint alleges that on or about June 14, 2012 and on or about December 11, 2012, Defendant possessed methamphetamine with intent to distribute, and possessed ammunition as a convicted felon.

The offenses charged in this case give rise to a rebuttable presumption of detention. 18 U.S.C. §§ 3142(e)(3), (f)(1)(C) and (D). The presumption of detention shifts the burden of *production* to the defendant; the ultimate burden of persuasion remains with the Government. *See United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008).

The nature and circumstances of the offense weigh in favor of detention. At the hearing, the Government proffered that in two of the arrests related to the instant offense, officers had found Defendant in possession of large amounts of methamphetamine, more than what would be possessed for personal use. On June 14, 2012, officers found Defendant in possession of 119.8 grams of methamphetamine, 65.4 grams of marijuana and 45 bullets. On December 11, 2012, he was found in possession of 153.5 grams of methamphetamine, 0.5 grams of heroin, and $3953.25 in cash. On one occasion, the methamphetamine was tested and was found to be 99.9% pure. As to the June 14th offense, Defendant fought the arresting officers, and it required several police officers to subdue him. He also ran from the officers to a bathroom, allegedly to dump drugs. The next day, after being advised of his Miranda Rights, Defendant admitted that the methamphetamine and ammunition belonged to him. These facts suggest that Defendant poses a danger to the community which weighs in favor of detention.

The circumstances surrounding Defendant's June 14, 2012 arrest, where he attempted to flee and resisted arrest, as well as the penalties Defendant faces if he is found guilty of the alleged offenses, indicate that he is a flight risk. As mentioned above, when Concord police officers tried to arrest Defendant, he ran to the bathroom to allegedly dump drugs. He then resisted arrest and it took three police officers to subdue him. This suggests that Defendant may flee and/or fail to cooperate with law enforcement. Though the weight of the evidence is the least important factor in the analysis, Defendant allegedly confessed that the drugs and weapons found in the June 14,

2012 search belonged to him, and in the December 11, 2012 search, drugs were found in a car registered to his name and address. Accordingly the weight of the evidence weighs in favor of detention.

**B. The History and Characteristics of the Defendant and the Nature and Seriousness of the Danger to Any Person or the Community**

Defendant is 47 years old. He was born in San Leandro and has spent most of his life in the greater bay area. His mother lives in Albany, California, and his father lives in Vacaville, California. Defendant has been estranged from his father for the last three years, and has had minimal contact with his father his entire life. Defendant had little contact with his mother for the last three years, but they are now back in regular contact. Defendant has two paternal half-sisters; one lives in Oakland, California, and the other in Patterson, California. Defendant has an adult child, Celena Murrington, who is 23.

Defendant has never been married, but has been in a relationship with Tawnie Fibush for the past two years. His adult daughter is from a previous relationship. Defendant and Ms. Fibush have lived in a home she rents in Pittsburg, California, for the past nine months to one year.

Defendant does not have a passport and his sole travel was to the U.S. Virgin Islands and Puerto Rico as a minor.

Defendant attended Amador High School in Pleasanton, California and Albany High School in Albany, California, each for a few years, but did not graduate. He received his general equivalency degree through Albany High School in 1983. Defendant has been self-employed in the construction and welding field for the past two years. Before that, he was employed as a maintenance mechanic at the Valero Refinery in Benicia, California for one year. Beyond that, Defendant's work history and residential history are unstable.

Defendant's criminal record contains at least six drug related felony convictions: two counts of possession of a controlled substance for sale in 1988, one count of possession of a controlled substance for sale in 1989, one count of possessing a controlled substance in 1992, one count of possessing a dangerous drug without a prescription and one count of manufacturing and

United States District Court
Northern District of California

possessing a controlled substance for sale in 1995, one count each of possessing and transporting a controlled substance for sale in 2000, one count of possessing a controlled substance for sale in 2006, and several recent charges in which he was booked and released, all relating to possession of a controlled substance or marijuana and a firearm or ammunition.

In addition, Defendant has a case for possession of a controlled substance for sale currently pending in Contra Costa County, stemming from an arrest on January, 27, 2011.

Defendant's criminal record also includes a felony conviction for evading a peace officer in 1992, being a felon in possession of a firearm in 1995, possessing a controlled substance for sale while armed in 2000, and a misdemeanor conviction of obstructing or resisting an executive officer in 2000.

Beginning in 1993, Defendant spent three years in custody with the California Department of Corrections for convictions of possessing a controlled substance for sale and transporting narcotics and a controlled substance. Beginning on August 1, 1995, Defendant entered the custody of the California Department of Corrections to serve an eight year sentence for convictions of manufacturing and possessing controlled substances for sale and for felon in possession of a firearm. After a parole violation on October 31, 2000, Defendant entered the custody of the California Department of Corrections on November 6, 2000 to finish his term. On July 24, 2006, Defendant entered the custody of the California Department of Corrections and Rehabilitation to serve a six year sentence for a conviction of possession of a controlled substance for sale and a violation of parole. This history indicates that Defendant has spent most of his adult life incarcerated and is not amenable to community supervision.

Counsel for Defendant argued that Defendant is a methamphetamine addict and that almost all of his problems with law enforcement stem from his addiction. Defense counsel argued that if Defendant attended drug treatment, his addiction and, therefore, his problems with the law could, be remedied. This is not an accurate characterization. As stated above and noted by counsel for the Government, several of Defendant's arrests involved not only methamphetamine but marijuana, heroin, and prescription drugs, and Defendant has, on several occasions, been arrested while in possession of firearms and ammunition, showing he is a danger

to the community beyond his methamphetamine use. Further, the Government proffered that Defendant has been found in possession of much more methamphetamine than what would be possessed for personal use, and a large amount of cash. This, the Government argued, indicates a pattern of drug dealing. Continued drug dealing represents a danger to the community. *U.S. v. Hare*, 873 U.S. 796, 798-99 (5th Cir. 1989). Defense counsel's contention that drug treatment could mitigate Defendant's risk of danger to the community and flight is not persuasive, as his previous offenses go beyond personal use, and include charges for being a felon in possession of a firearm and other weapons related charges. This history shows that Defendant poses a danger to the community. There are no conditions of release, such as participating in drug treatment, or having his mother serve as a surety on an unsecured bond, sufficient to mitigate Defendant's danger to the community.

**C. Risk of Nonappearance**

Factors that indicate Defendant poses a risk of nonappearance include, as described above, Defendant's history of drug arrests and flight from arresting officers, a previous failure to appear, and the lengthy sentence he faces. Mitigating factors include his lifelong residence in the San Francisco Bay Area, familial ties to the district, and lack of international travel.

Congress has found that drug offenders pose a special risk of flight. *Hare*, 873 U.S. at 798-99. As noted above, Defendant has multiple convictions for possession of a controlled substance for sale, and he has other similar charges currently pending against him in Contra Costa County. He faces a mandatory minimum of 10 years if found guilty of the instant offenses, which will be raised to 25 years if the Government files one of his prior offenses, and life if the Government files a second prior. 21 U.S.C. § 851. Defendant's attempt to flee arresting officers indicates that he is aware of the seriousness of the charges against him, and, after arraignment, he now knows he faces a potentially enhanced sentence due to his criminal history. In 1988, Defendant was charged with failure to appear after being arrested for possession of a controlled substance. Further, Defendant's previous convictions for attempting to evade arrest and obstruct

an executive officer, and the circumstances surrounding his June 14, 2012 arrest, where he fought arresting officers, indicate that he is a significant flight risk.

Defendant and most of his family live in the greater bay area, and his mother and daughter were present at the detention hearing. Defendant's mother was willing to sign an unsecured bond and act as a surety during his pretrial release; however, she was not willing to use her home, valued at $1,000,000 with a $350,000 mortgage, as collateral for the bond. Defendant's mother works for a non-profit agency, earns approximately $100,000 annually, and does not have a criminal history. She was also willing to serve as a third-party custodian, and have Defendant live in her home while he attended drug rehabilitation and install a separate phone line for location monitoring if needed. Defendant's paternal half-sister is also willing to sign an unsecured bond. She has no significant assets and earns approximately $47,000 annually.

The Court notes that while Defendant's mother, with whom he has recently reunited after a period of estrangement, has offered to serve as a third party custodian and sign an unsecured bond to secure his release, she is not willing to post her home or other assets to assure Defendant's appearance in Court. Defendant has a propensity to violate probation by committing new offenses, and it is unlikely that an unsecured bond would provide Defendant with sufficient moral suasion to abide by the conditions of pretrial release. Though Defendant is also willing to wear an electronic monitoring device, this does not sufficiently mitigate his risk of flight.

## III. CONCLUSION

In light of Defendant's criminal history, the nature of the instant offense, and the weight of the evidence, the Court finds that Defendant presents a danger to the community and a risk of nonappearance, and that there is no condition or combination of conditions that will reasonably assure the safety of any other person or the community.

For the reasons set forth above, Defendant shall remain committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. Defendant shall be afforded reasonable opportunity for private consultation with counsel. On order of a court of

United States District Court
Northern District of California

the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which Defendant is confined shall deliver Defendant to a United States marshal for the purpose of an appearance in connection with a court proceeding.

IT IS SO ORDERED.

DATED: June 4, 2013

KANDIS A. WESTMORE
UNITED STATES MAGISTRATE JUDGE